# HORACE W. CARPENTIER *v.* FAXON D. ATHERTON.

LAWFUL MONEY.—By the laws of the United States there are three kinds of money, to wit: gold, silver, and treasury notes, each of which is made a legal tender in payment of debts.

ENFORCEMENT OF A SPECIFIC CONTRACT.—The Act of the Legislature of this State, passed April 27th, 1863, commonly called the "Specific Contract Law," providing for the enforcement in terms of contracts made payable in a specified kind of money or currency, is not in derogation of nor does it conflict with the laws of Congress making United States notes lawful money and a legal tender in payment of debts ; and under said Act a judgment may be rendered and enforced, payable in the kind of money specified in the contract or obligation on which it is rendered.

IDEM.—Said Act creates no new right. It only adds one to the cases found in the common law in which it is competent for Courts to enforce the execution of contracts specifically.

DISCHARGE OF MONEY CONTRACTS.—A contract made to pay money generally may be discharged by a tender and payment of either of the three kinds of money made a legal tender by the laws of the United States; but a contract made to pay in one of the three kinds of money cannot be discharged by a tender of either of the two other kinds.

VALUE OF EACH KIND OF MONEY.—A Court cannot say judicially that one kind of money, made a legal tender, is of greater or less value than another ; nor can evidence be received that a dollar of one kind is of greater or less value than another.

COSTS AND INTEREST.—Where a contract is made payable in a specific kind of money, the judgment enforcing it may enforce the payment of costs and interest in the kind of money mentioned in the contract.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*W. W. Cope*, for Appellant.

Assuming the Act of Congress to be constitutional and valid, it is clear to my mind that the Act of the Legislature is invalid. No debt can be created under the latter to which the former does not apply, and the two Acts are directly repugnant to each other. The one embraces all debts not therein specially exempted, and declares that they may be paid in legal tender notes ; the other provides for a class of debts not included in the excepted cases, and declares that payment shall be made in such money as the contract may call for. The effect is to make an exception not made in the original

Act; and if this can be done, the object of the Act may be entirely defeated, and its efficacy as a piece of practical legislation destroyed. A contract payable in money is a debt, and the fact that it mentions a particular kind of money in which payment is to be made, does not alter its legal character. It is still a debt, and by the express letter of the law of Congress may be paid in legal tender notes.

It is said, however, that the Act of the Legislature merely furnishes a remedy where none existed before; that the contracts referred to are legal and valid, and that the remedy given is in strict accordance with the spirit and principles of equity jurisdiction. All this may be admitted without prejudice to the position for which I contend, as it obviously does not make the point. The question is—whether the Act is in conflict with the law of Congress; if so, it is invalid; and its validity must be tested by that law. If there is any conflict in the practical working of the two Acts, the Act of Congress must stand, and the other fall. If the latter derogates in any respect from the force and effect of the former, there is an end of the question. If it takes from its operation any case embraced by its provisions, the conflict is beyond dispute. It is immaterial in what way, or by what means the conflict is brought about. The simple question is, does it exist; and as to that I see no ground for a difference of opinion. The effect of enforcing contracts of this character specifically, is not merely to compel a literal performance of the contracts, but to exempt them from the operation of a law which clearly embraces them in its provisions. The Act of Congress applies to the payment of contracts and not to the making of them, and any attempt to avoid its operation by means of new remedies based on the form of the contract, is a fraud upon the law. In substance and legal effect, a contract payable in gold is the same as a contract payable in money generally; it is simply a debt, and must be so regarded for all purposes. As between the parties, it may be just and equitable to enforce such a contract according to its terms, but under the Act of Congress the Courts have no power to do so. Every con-

tract having the character of a debt may be paid in legal tender notes; so says the paramount law of the land.

*Clarke & Carpentier*, for Respondent.

The statute for enforcing specific contracts simply supplies a remedy wanting at the common law, but entirely within the *spirit* of equity jurisdiction, in decreeing specific performance.

By the common law every contract to transfer a thing is treated as a mere personal obligation, which, if unperformed, is compensable only in damages, thus allowing the party contracting the benefit of the election to perform or pay damages.

Where the damages can be clearly ascertained and exactly computed, the remedy at law is held to be sufficient. But where compensation in damages would fall short of the redress to which a party is entitled, the jurisdiction of equity arises, upon the principles of natural justice, to compel a performance *in specie*. (Story on Eq. Jur. §§714–719.)

The specific contract law is not forbidden by or in contravention of the legislation of Congress on the subject of the currency.

The statute of Congress passed July 11, 1862, (Supp. to Brightley's Dig. 1,165,) authorizes the issue of notes by the Secretary of the Treasury " on the credit of the United States, which shall be receivable in payment of all loans made to the United States, and of all taxes, internal duties, excises, debts, and demands of every kind due to the United States, except duties on imports and interest, and of all claims and demands against the United States, except for interest upon bonds, notes, and certificates of debt or deposit; and shall also be lawful money and a legal tender in payment of all debts, public and private, within the United States, except duties on imports and interest as aforesaid."

The power of Congress to pass this law is not disputed.

But, the question arises, whether our specific contract law

Carpentier *v.* Atherton.

is forbidden by or in any way contravenes this Act of Congress. And in determining this question, we must consider the object and intention of Congress, as well as the language employed in the Act.

Congress might have forbidden contracts answerable in coin, and might have forbidden the employment of gold and silver as a currency, and then the only question would be one of power, under the Constitution of the United States, to pass such a law. But such was not the policy of the Government. The object was to give a value to treasury notes, by making them a legal tender in certain cases, in relief of its financial necessities. There is nothing in the law to indicate the design to interfere with the ordinary course of commercial transactions, to shape or control business contracts, or to suppress the circulation of the precious metals wherever the stipulation of parties may except in their favor. By the law there are two kinds of currency recognized and established, but which are confessedly of different values, and which no law can equalize.

The Act of Congress excepts in favor of gold in the payment of certain debts, payable by Government, and of certain others payable to the Government.

By the Court, CURREY, J.

The defendant made and delivered to the plaintiff his contract in writing, bearing date the 2d of April, 1864, by which, for a valuable consideration, he promised to pay to the plaintiff the sum of five hundred dollars on demand, in United States gold coin. Some time afterwards the plaintiff duly demanded payment of the sum of money due on this contract, in the kind of currency specified therein. The defendant refused to pay in gold coin, but subsequently, and before this action was commenced, tendered and offered to pay to the plaintiff certain United States notes, amounting in the aggregate to the sum of the principal and interest due the plaintiff. The United States notes so tendered were issued under and in

pursuance of the Act of the Congress of the United States, entitled "An Act to authorize an additional issue of United States notes, and for other purposes," approved July 11, 1862. By this Act the notes so tendered were made lawful money and a legal tender in the payment of all debts, public and private, within the United States, except as therein otherwise provided.

The defendant, by his answer, pleaded the tender of these United States notes for the payment of the amount due, and brought the same into Court with his answer, ready to be paid to the plaintiff.

The plaintiff demurred to the answer on the ground that it did not state facts sufficient to constitute a defense, specifying as causes of demurrer :

1st. That the United States notes tendered are not money, and the plaintiff was not nor is by law obliged to receive the same in payment of the sum of money due him.

2d. That by the contract on which the action was brought the defendant promised to pay the sum of money due plaintiff in gold coin of the United States, and the defendant does not aver a tender of the amount due in such coin.

The demurrer was sustained, and at the same time leave was granted to the defendant to amend his answer, which he declined to do, whereupon the Court ordered and adjudged that the plaintiff have and recover against the defendant the principal and interest due, and the costs of the action, specifying the amount thereof, payable in gold coin of the United States ; and it was further ordered and adjudged that the plaintiff have execution to enforce the collection of such judgment, with the interest which might accrue thereon, and that such execution specify, direct and provide that the judgment and all accruing interest thereon "shall be collectable only in gold coin of the United States."

The defendant has appealed from this judgment, which brings up the case to be considered upon certain alleged errors, that are assigned in a well drawn bill of exceptions, presenting the whole case upon its real merits.

The exceptions taken to the rulings and judgment of the

Court, raise the question as to the validity of the Act of the Legislature of this State passed on the 27th of April, 1863, commonly called the " Specific Contract Law," in so far as its provisions relate to the points involved in this controversy. (Laws of 1863, p. 687.)

The second section of this Act provides that : "In an action on a contract or obligation in writing, for the direct payment of money, made payable in a specified kind of money or currency, judgment for the plaintiff, whether the same be by default or after verdict, may follow the contract or obligation, and be made payable in the kind of money or currency specified therein." The third section of the Act provides that the execution to be issued on such judgment shall state the kind of money or currency in which the judgment is payable, and shall require the Sheriff to satisfy the same in the kind of money or currency in which it is made payable, and that the Sheriff shall refuse payment in any other kind of money or currency ; and in case of levy and sale of the property of the judgment debtor, he shall refuse payment from any purchaser at such sale, in any other kind of money or currency than that specified in the execution.

It is a cardinal rule in the construction of statutes that every reasonable intendment is to be made in support of their validity. (*Morris* v. *The People*, 3 Denio, 381 ; *Ex parte McCollum*, 1 Cow. 564 ; *Fletcher* v. *Peck*, 6 Cranch, 87 ; *People* v. *Supervisors of Orange*, 17 N. Y. 241.) But whenever it is clear that the Legislature has transcended its powers, in the passage of an Act which is repugnant to paramount law, it is among the most important duties of the judicial authority to declare the invalidity of the Act so passed. (*Adams* v. *Howe*, 14 Mass. 345 ; *Fletcher* v. *Peck*, 6 Cranch, 87.)

By the laws of the land, the country is furnished with three kinds of money—gold, silver and United States notes—as a medium of exchanges. Money, made by the coinage of gold or silver, is a legal tender as prescribed by law, in the discharge of obligations, which are to be satisfied by the payment of money, in general terms ; and we have held in *Lick* v.

72

*Faulkner,* (*ante,* 405,) and in other cases, that the notes of the United States, issued by the authority of the laws of the National Legislature, are a lawful and authorized currency, and in that sense lawful money and a legal tender in the payment of private debts; but it does not follow that every kind or any kind of money which by law is a legal tender in the payment of debts may be tendered in satisfaction of every obligation capable of performance by the transfer and delivery of property in satisfaction of it.

In *Lick* v. *Faulkner* we said, upon good authority, that gold and silver are commodities, the value of which is estimated by the value of other things, in the same manner as that of the latter is estimated by the value of gold and silver. This quality or characteristic of the precious metals is not destroyed by their division into parcels bearing the impress of the mint and possessing a specific value, ascertained and regulated by positive law. If one agrees generally to pay or deliver to another a given number of dollars, he may perform his contract by the payment of the specified sum in any kind of dollars which are recognized as such and made a legal tender for the purpose by the law of the land; for by doing so he fulfils his engagement according to its letter; but if he contracts to pay his debt in a particular kind of money, his obligation cannot be discharged in accordance with his stipulation by payment in a different kind of money; and though by the unaided rules of the common law he could not be compelled to perform specifically that which he had promised, yet, in morals, his obligation to do so is in no degree diminished.

Courts of equity from an early period have exercised jurisdiction, enforcing the specific performance of contracts, for the reason that the Courts of common law, though recognizing the obligation of the parties to a contract to perform their respective parts of it according to its terms, could not afford this remedy to the party injured by the non-performance of the other. At law the party disappointed by the breach of the contract was compelled to be satisfied with money, as a

substitute for the thing for which he had contracted, and to which he was in justice entitled.

The money recovered in such cases, by way of damages, was considered as a substantial equivalent for the injury sustained by the breach of the contract. But upon this subject Judge Story says: "It is against conscience that a party should have a right of election whether he will perform his covenant or only pay damages for the breach of it." (Story on Eq. Jur. 717 *a*.)

Contracts relating to real property embrace by far the most numerous instances in which the jurisdiction of a Court of equity may be invoked to administer the remedy of specific performance. But this species of remedy has not been limited to the enforcement in terms of agreements relating to lands. It has been in many instances extended to enforcing specifically contracts relating to personal property, and also to the performance of personal acts, though in such cases peculiar circumstances must exist to call forth the remedial agency of the Court. The reason assigned for the universal exercise of this jurisdiction as to contracts respecting lands and not in relation to agreements concerning personal property is not because of any distinction between realty and personalty, but because in the former case damages at law cannot be regarded as a complete and adequate remedy for the breach of the contract, while in the latter a compensation in damages is deemed commensurate with the injury sustained. But whenever a violation of a contract relating to personal property cannot be correctly estimated in damages, or whenever, from the nature of the contract, a specific execution of it is indispensable to justice, a Court of equity will not refuse its aid. (*Duff* v. *Fisher*, 15 Cal. 381; Willard's Eq. Jur. 271, 280; *Fells* v. *Reed*, 3 Vesey, 70; *Sullivan* v. *Tuck*, 1 Maryl. Ch. Decisions, 59; *Waters* v. *Howard*, Id. 112; *Barr* v. *Lapsley*, 1 Wheat. 152; *Phillips* v. *Berger*, 2 Barb. 608, and 8 Barb. 528; *Stuyvesant* v. *The Mayor of New York*, 11 Paige, 414, 427; Story's Eq. Jur., Sections 712 to 720.)

The man who contracts to sell and convey lands is under

no greater obligation, morally, to perform his agreement than he who agrees for a valuable consideration received, to deliver to the purchaser personal property which he has sold, is to perform his.  If there be any distinction between the two cases, let the learned casuist resolve it, for if on this point we are in error we need to be instructed.

The Act of the Legislature by authority of which the judgment in this case was rendered is remedial in its nature, affording to the party who may be justly entitled to the performance of the contract in terms the means of enforcing it.  The right to its enforcement is consistent with good faith, and with the dictates of a scrupulous and exact justice.  Then, is the Legislature competent to provide for the creditor a remedy to compel his debtor to do what he has solemnly and deliberately bound himself to do?  On this point there can be no doubt, unless the Act under consideration is in derogation of the laws of Congress making United States notes lawful money and a legal tender in the payment of debts.  Upon the solution of this question our judgment must necessarily depend.

Before a Court, duly appreciating the measure of its duty, will declare an Act of the Legislature invalid, as contravening the laws of Congress, a case must be presented in which there can be no rational doubt (*Ex parte McCollum*, 1 Cow. 564;) for it is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts to be considered void.  (*Fletcher* v. *Peck*, 6 Cranch, 87.)

It is insisted on the part of the appellant that, as the Acts of Congress making United States notes lawful money and a legal tender in the payment of private debts is the paramount law, therefore such currency is adequate for the discharge of all debts which are to be satisfied by the payment of money.  This is so, as we have already observed, in respect to debts that are payable in money generally; but as to the contract, which is the foundation of the judgment in this case, it is more than a contract for the payment of money merely.  It goes to the extent of defining by what specific act the contract shall

be performed.   By the admitted and settled rules of law, such a contract can be performed, according to the agreement of the parties, only by the payment of the kind of money specified.   Is there anything in law or morals opposed to such a contract ?   If not, what objection can there be to enforcing it in case its voluntary performance is refused ?   That a creditor may have uses for money of a particular kind, the Acts of Congress making United States notes lawful money and a legal tender in the payment of debts seem to have contemplated. He may have to pay duties on imports and debts beyond the territorial jurisdiction of the United States, and for these uses these Government notes are not a legal tender.   Necessities of the kind suggested exist in commercial communities, where United States notes are the usual media of exchanges, as verified by every day's experience.   The importer of merchandise must have gold and silver money to pay the duties imposed by law on his importations.   With such means only can he discharge his pecuniary obligations to the Government.   He must have metallic money for the purchase of such merchandise, because the paper currency of the Government will not answer his purpose abroad.   The importation of goods from foreign countries is a lawful trade, which Congress, under the Constitution, may regulate and has from time to time regulated.   By what means is the merchant, who is engaged in this species of trade, to provide for his necessities—that is, for the payment of his debts abroad and his duties on imports at home—unless by securing payment from his debtors in the kind of money which he needs and without which he must abandon the business in which he is engaged ?   Perhaps it will be answered that he must sell his goods for ready money, and not upon a credit, and thus secure a price in gold and silver; and the purchaser from him must in his turn also sell for like ready money in order to be furnished with the means to pay the importer; and the consumer must also provide himself with the same kind of money, let it be derived from what source of industry it may, to pay for the goods he may need for consumption.

If the owner of property may sell the same for metallic money, to be paid concurrently with the sale and delivery of it, we can see no reason why he cannot sell for the same kind of money to be paid at a future day. A sale on credit is, by the customs and laws of trade, recognized as legitimate and is deemed to be consistent with good conscience and sound morals.

It is sometimes argued that the Act of the Legislature under consideration discriminates invidiously, to the discrediting of United States notes. We are unable to perceive wherein. There is certainly nothing in the Act itself that can justify any such inference. If such a charge were made against the Act of Congress making United States notes lawful money and a legal tender in the payment of certain debts, it might be maintained with more seeming plausibility. Congress itself has limited the uses to which the notes can be applied, and has provided expressly that in certain cases gold and silver money only shall be used within the United States for the discharge of pecuniary obligations, and thus, by implication, at least, has recognized an existing necessity for the employment of gold and silver money for the excepted uses. But even in this we cannot perceive that any unjust discrimination is made between the different kinds of money. With the people of some countries trade can be carried on by the use of silver money with greater convenience and advantage than with gold coin; yet it cannot be said that the merchant who furnishes himself with silver money for his purposes thereby discriminates to the prejudice of gold. The argument that the Act in question unjustly distinguishes between metallic and paper money, if valid as an objection to contracts for the direct payment of a particular kind of money, upon a credit given, is equally so as to sales made for the same kind of money, paid concurrently with the sale. It would be illogical to hold that the effect in the one case is more or less detrimental to the credit of United States notes than in the other. Arguments of the character which we have here noticed are too

obviously fallacious to require even the attention which we have devoted to their refutation.

Again.   The man of means, actuated by patriotic motives to aid the Government, or for the purpose of legitimate investment, may desire to accumulate United States notes, with the view of exchanging them for bonds of the Government payable within the time and bearing the rate of interest specified and provided in the Act of Congress.   Is there, or can there be, any good reason why he may not provide for the desired supply by securing payment from his debtors in the kind of money that would serve his purpose?   Is not the end which he seeks lawful, and are not the means employed legitimate to the end?

The Acts of Congress relating to the national currency, comprehending all kinds of money, and the various provisions of those Acts, must be considered and construed *in pari materia*. By this course it will be readily and at once perceived that while United States notes are by the sovereign behest made lawful money and a legal tender in the payment of debts, except in the instances specified, gold and silver money is equally, by force of positive law, a legal tender in the payment of all debts, and is also recognized as an indispensable currency for purposes to which Government notes cannot be applied; and therefore the inference is logical, if not inevitable, that Congres did not design that these Acts should interfere to prevent men from contracting for any particular kind of money they might need.

Whatever, in the estimation of men engaged in monetary transactions, may be the difference in value between gold and silver money and the paper currency of the Government of the same denominations, we cannot say judicially that a gold or silver dollar is of greater or less value than a United States note of the same denomination, and we doubt if a case could be presented to a Court of justice which would authorize evidence of a difference in the value of the two kinds of money. A Court would be placed in an anomalous and absurd predicament in listening and giving heed to evidence designed to

establish as a fact that one dollar is worth more or less than another.   (*Woods* v. *Bullens*, 6 Allen's R. 516.)

By an Act of the Congress of the United States, passed in eighteen hundred and fifty-three, silver money, consisting of half dollars, quarter dollars, dimes and half dimes, issued in accordance with the standard of that Act, was made a legal tender in the payment of debts, in sums not exceeding five dollars.   Now, if A. should loan to B. one thousand half dollars, coined under the Act of eighteen hundred and fifty-three, and B. should in consideration thereof contract with A. to pay the debt so created in like silver coin, would not a tender of the same kind of money in payment of the debt be a legal tender ?   No one, we apprehend, who understands the import of the word *tender*, would answer otherwise than in the affirmative.   Then, if the debtor in such case could discharge his obligation by a voluntary performance of his promise, on what just principle could he escape it if he were so determined ?   The duties of the obligor and obligee in such cases must be reciprocal, and they should be commensurable.   In the nature of things, that which it is lawful to tender, under the contract supposed, on the one hand, it is lawful to demand on the other.   (8 Barb. 528 ; 1 Sim. & Stu. 174 and 607 ; 2 Edw. Ch. R. 531 ; Story's Eq. Jur. Sec. 723.)

The Act of the Legislature under consideration is purely remedial in its nature.   It creates no new right in the abstract. It does no more than add to the cases in which it is competent for the Courts to enforce the execution of contracts specifically, and provides the means by which this can be done. In this, the Act is in harmony with the doctrines of equity jurisprudence relating to kindred subjects, and at the same time it in no just sense contravenes the laws of Congress making United States notes lawful money and a legal tender in the payment of debts.

It is alleged, on the part of the appellant, that the Court erred in determining by judgment that the costs and disbursements of the action must also be paid in gold coin.

The second section of the Act provides that judgment for

Carpentier v. Atherton.

the plaintiff may follow the contract or obligation and be made payable in the kind of money or currency specified therein. The plaintiff was entitled to recover his costs, which became a component part of the judgment and payable in the kind of money specified therein.

The judgment is affirmed.

SAWYER, J., concurring:

I entered upon the consideration of the questions involved in this case, not without grave doubts as to the validity of the Specific Contract Act; for, when we held the Act making treasury notes a legal tender in payment of all debts, public and private, to be constitutional, it seemed to follow as a logical consequence, that if an agreement to pay a given sum of money in gold coin is a debt, within the meaning of the law, then, the debtor is entitled to discharge it by paying the amount called for in treasury notes. And this would undoubtedly be true in relation to all debts contracted generally, without any limiting or qualifying term in the contract creating the liability. In such a case, the law has given to the debtor his option to elect which kind of money made by law a legal tender he will adopt in discharging his liability. It is a right or privilege conferred on him of which he cannot be deprived except with his consent. But a right or privilege conferred upon an individual, either by constitutional, or statutory law, may be waived by the party interested unless such waiver would contravene public policy. Such is the case even in criminal law. Natural persons of full age, of sound mind and under no recognized legal disabilities, are endowed with an unlimited capacity to contract with other persons similarly situated, in all things except as to those matters which are against public policy, or prohibited by law. Gambling contracts, contracts for the payment of money in consideration of future cohabitation in a state of concubinage, and the like, are prohibited as being contrary to good morals, and the best interests of society. In some States usurious contracts

73

are contrary to public policy, and are prohibited. But there is nothing in a contract for a sufficient consideration to pay a given sum in gold coin, or any other kind of money, that is immoral, or that in any respect contravenes public policy. It has never been prohibited, either expressly or by implication, and no policy against the making of such contracts has in any manner been indicated on the part of the Government. The Government has created three kinds of money, which, it has provided, shall be legal tender in the payment of debts—gold coin, treasury notes, and silver coin in limited amounts—but it has nowhere intimated, in the remotest degree, a preference for any one of these kinds of money over the others, or any desire that debts should be paid in any one rather than in the other, but has left it to the parties interested to act as their own interests may dictate. Neither, so far as we have been able to discover, has there been any restriction placed upon the capacity or right of parties to contract with reference to these several kinds of currency, other than is hereinafter specified. On the contrary, the law expressly recognizes contracts for the delivery of gold coin.

The Act of March 3, 1863, amending the Act to provide for internal revenue, etc., provides " that all contracts for the purchase or sale of gold or silver coin, or bullion, and all contracts for the loan of money or currency, secured by pledge or deposit, or other disposition of gold or silver coin of the United States, if to be performed after a period exceeding three days, shall be in writing, or printed, and signed by the parties, or their agents or attorneys, and shall have one or more adhesive stamps, as provided in the Act to which this is an amendment," etc.   *   *   *   *   " And no loan of currency or money on the security of gold or silver coin of the United States, as aforesaid, or of any certificate or other evidence of deposit payable in gold or silver coin, shall be made, exceeding in amount the par value of the coin pledged or deposited as security ; and any such loan so made or attempted to be made, shall be utterly void."   *   *   *   *   " That all contracts, loans or sales of gold and silver coin and bullion,

not made in accordance with this Act, shall be wholly and absolutely void." (12 U. S. Statutes at Large, p. 719, Sec. 4.)

Here is an Act of Congress upon the subject of the purchase and sale of gold coin, which recognizes the validity of such contracts, and regulates the mode of making them. It only prescribes that in all cases where more than three days shall elapse between the time of making the contract and its fulfilment, the contract shall be written or printed, and signed by the parties, and shall have one or more adhesive stamps. Upon well settled rules of construction, all such contracts made in conformity with the provisions of this Act, and also all contracts of sale or purchase not having three days to run, are valid. This is the only limitation or restriction upon the power of parties to contract for the payment, or sale and delivery of coin. When we come to a loan of currency or money on the security of gold or silver coin, or of any certificate or other evidence of deposit payable in gold or silver coin, the law prescribes that the amount of the loan shall not exceed the par value of the coin. But no restriction as to price is imposed upon the sale or purchase of, or any other dealings in coin. Of course, if contracts in regard to coin are permitted by the law, those contracts must be valid, and the law contemplates that the contracts will be fulfilled according to their terms.

So, also, the Act to provide ways and means for the support of the Government, passed March 3, 1863, provides " that the Secretary of the Treasury is hereby authorized to receive deposits of gold coin and bullion with the Treasurer and Assistant Treasurer of the United States, in sums not less than twenty dollars, and issue certificates therefor in denominations of not less than twenty dollars each, corresponding with the denominations of United States notes. The coin and bullion deposited for or representing the certificates of deposit shall be retained in the Treasury for the payment of the same on demand." (Ib. p. 711, Sec. 5.)

For the convenience of the people, the Government consents to become a depositary of their coin when desired by the

owner; and upon a deposit of gold coin, the Treasurer is authorized to issue a certificate of deposit to the owner, payable in gold coin.  The coin thus deposited is not to be used, but is to be "retained in the Treasury for the payment" of the certificate, on demand.  Why not pay it in treasury notes?  Simply because it was deposited upon an agreement at the time that it should be returned in coin, and common honesty demands that the contract should be fulfilled.  The Government would get no coin deposited in its Treasury upon any other terms; hence, when it undertook to become a depositary of coin for its citizens, it was necessary to do as other bankers or persons receiving deposits do—enter into a contract to return the deposit in like funds.  These certificates go into circulation in the place of the coin, and become subjects of commercial and financial transactions.  The Government in these acts recognizes the propriety of such transactions.  And why should not a banker, in the absence of any law prohibiting such transactions, not receive gold coin on deposit, and when he has done so, and issued a certificate showing the fact, and agreeing in consideration thereof to repay the same in gold coin, not be bound by his contract?  And why should not a party who has borrowed gold on the faith of his agreement to return the loan in like kind be required to perform his solemn obligation?  Good faith and good morals demand it.  No law prohibits it, or prohibits making such contracts; the Government has made no discrimination through the law-making power in favor of one kind of money against another.  It makes such contracts itself with the citizen, and expressly recognizes contracts between citizens for the purchase and sale of coin.  The Government also requires certain portions of its revenues to be paid in coin, and thereby imposes on its citizens a necessity to procure it.  No one disputes the right of a party to make all his business transactions upon a coin basis, and to refuse to part with any piece of property, or perform any service without requiring the coin in hand.  If, to meet the necessities imposed on him by Government, or his convenience otherwise demand it, he may make a contract for coin, to be

Carpentier *v.* Atherton.

executed by delivering it at the time the contract is made, why may he not make a similar contract providing for the anticipated emergency, to be executed in the future, when the emergency shall arise ?   And if he make the contract, why is he not entitled to have it enforced according to its terms ?   We have seen that the Act of Congress permits a contract to sell and deliver gold coin on a future day.   In what respect does an agreement, for a sufficient consideration, to pay on some future day a given amount in gold coin differ in principle from a contract to sell and deliver at a future day a like amount of gold coin ?   I can perceive none.   The transactions in effect are substantially the same.   Practically, the party who agrees to sell and deliver coin at a future day does not agree to sell or deliver any specified piece or pieces of coin then in his possession, but he agrees to sell gold coin generally, relying upon his ability to procure it when the time for fulfilment arrives. A contract payable in coin is substantially the same thing. The only difference is in the form of expressing the contract, and not in the substance of it—the thing to be done.   Such contracts do not appear to me to be against the policy of the law ; for we have seen that the Act of Congress expressly recognizes, and nowhere forbids them.   Coin is lawful money. A party may lawfully pay his debts in coin.   He may, at his election, waive his right to pay in anything else, either with or without consideration.   The only question is, as to when he shall exercise his right to make his election or waive his privilege ; and when he has made his election, and inserted it as one of the essential terms and conditions of his contract, for a full and adequate consideration, there seems to be no good reason in morals, or public policy, why he should not be compelled to abide by his election and the express terms of his agreement. Such contracts, then, are valid.

Both a contract to pay a sum of money in gold coin, and a contract to sell and deliver coin at a future day, create a debt in a general sense, and in that respect stand on the same footing.   But they do more.   The party agreeing to pay or deliver gold coin at a future day, not only creates a debt

which he agrees to pay, or discharge, but he also waives the privilege which the law would have guaranteed to him had he not voluntarily renounced it, and takes upon himself an obligation to pay it in a specific kind of lawful money, and nothing else.   The waiver and obligation are essential conditions, and parts of the consideration of the contract, without which, we must presume the contract would not have been made. The agreement to pay in coin is as much a part of the consideration as the agreement to pay at all, and the presumption is that an ample equivalent has been received for the promise. The parties, then, are competent to contract—the contract is not against public policy—it is not prohibited by law—is payable in a lawful kind of money, and is a lawful contract.

But in case of a breach, independent of the statute, there was no adequate remedy.   It was not one of the cases in which Courts of equity were in the habit of granting relief by decree for specific performance, although equity did grant relief upon breach of many, but not all contracts, in which the remedy at law was inadequate.   And in a Court of law the only remedy was a suit for damages.   But damages could only be estimated in dollars and cents, and in legal contemplation, whatever the fact might be in the commercial world, a dollar in one kind of money was equivalent to a dollar in another.   Hence, while in theory there was a remedy, practically it was inadequate.   There are many other cases in which parties who suffer from breaches in their contracts are without any adequate remedy.   For instance, a merchant has a large amount due him payable upon a given day, upon which he relies to meet his own obligations.   His debtor fails to pay at the time.   The merchant in consequence fails to meet his own engagements, is attached, his business broken up, and ruin is the result.   The measure of damages in such case, in a suit against his debtor, is only the money due and interest, while the actual damages may be three times that amount.   But this is the only remedy the law affords.   In such cases, and many others, it would be impracticable to afford full relief. Many difficulties inherent in the nature of things exist, which

Carpentier v. Atherton.

conspire to prevent the granting of a full measure of relief, and the law affords that measure of relief, only, which experience teaches, on the whole, to be most practicable, and to approximate, as a general rule, most nearly to doing substantial justice to all parties. But in the case of a contract payable in coin, an easy and practicable remedy may be applied to the breach of that branch of the contract requiring payment in a particular kind of money, by a judgment analogous to a decree in equity for specific performance. In these cases our statute affords the remedy, by authorizing a judgment for the specific kind of money agreed to be paid, and directing the execution to follow the judgment, and the Sheriff to sell property for, and receive in satisfaction of the execution, the kind of money only, which is provided for in the contract and judgment.

I do not see wherein this law, which only affords a more complete remedy for a breach of a contract lawful in itself, is in any respect in conflict with the Act of Congress, making treasury notes a legal tender in payment of debts. A contract payable in money generally, is undoubtedly payable in any kind of money made by law a legal tender, at the option of the debtor at the time of payment. He contracts simply to pay so much money, and creates a debt pure and simple, and by paying what the law says is money his contract is performed. But if he agrees to pay in gold coin it is not an agreement to pay money simply, but to pay or deliver a specific kind of money, and nothing else; and the payment in any other is not a fulfilment of the contract according to its terms, or the intention of the parties.

For these reasons, in addition to those contained in the able opinion of Mr. Justice Currey, I think the law relating to specific contracts valid, and that the judgment should be affirmed.

Mr. Chief Justice SANDERSON expressed no opinion.