## E. LANE *v.* JOSEPH GLUCKAUF.

CASE AFFIRMED.—The case of *Carpentier* v. *Atherton,* 25 Cal. 564, affirmed.

CONTRACT TO PAY IN GOLD OR LEGAL TENDER NOTES AT GOLD VALUE.—A contract agreeing to pay a specific sum in gold coin, or, upon failure thereof, to pay such further sum as may be equal to the difference in value between gold coin and legal tender notes, belongs to the class of contracts provided for in the so-called Specific Contract Act, and may be enforced according to its meaning.

SAME—CONSTRUCTION OF.—The meaning of such contract is that the maker will pay in gold coin, or, if he does not do so, in legal tender notes at their gold value.

JUDGMENT ON SUCH CONTRACT.—A judgment may be rendered on such contract payable in gold coin alone.

OBJECT OF SPECIFIC CONTRACT ACT.—The Specific Contract Act was not intended to legalize contracts which without it were illegal, but to provide a remedy for enforcing certain contracts, if held to be legal.

JUDGMENT WHEN THERE IS A TRIAL.—If in an action on a promissory note a trial is had, the Court may render judgment for the amount of the note and interest, and

make the judgment bear the same rate of interest as the contract, although the complaint only prays for judgment for the face of the note.

JUDGMENT ON NOTE PAYABLE IN GOLD OR GREENBACKS.—If a note is made payable in the alternative, either in gold or legal tender notes, a judgment rendered on it may also be in the alternative.

APPEAL from the District Court, Second Judicial District, Butte County.

This action was brought upon a written contract, of which the following is a copy :

"OROVILLE, August 4, 1863.

"$2,843.

"Six months after date, without grace, for value received, I promise to pay to the order of George C. Perkins the sum of $2,843 in gold coin of the standard value of 1860 of the United States of America, with interest at one and one half per cent per month till paid. And if said principal and interest is not paid in gold coin, as above stated, then, for value received I promise to pay to the order of said G. Perkins, in addition thereto, and as damages, such further amount and percentage as may be equal to the difference in value in the San Francisco market between such gold coin and paper evidence of indebtedness of the States or the United States, that are or may hereafter be made a legal tender in payment of debts by the laws of this State or the United States.

"JOSEPH GLUCKAUF."

After setting out the contract, the complaint avers that the same has been assigned by the payee thereof to the plaintiff, and that there is due thereon a certain sum, to wit : two thousand eight hundred and fifty-six dollars and sixty-two cents in gold coin, or a certain other sum in legal tender notes, to be ascertained by adding to the former the difference in value between gold and legal tender notes in the San Francisco market, adding that at the date of the complaint the latter were worth in that market only fifty cents on the dollar in gold coin.

The complaint concludes with a prayer for a judgment for

37

the sum of two thousand eight hundred and fifty-six dollars and sixty-two cents in gold coin of the United States, and in case the same is paid in legal tender notes, that the amount to be paid shall be made equal in value to that sum, to be ascertained at the time of payment from the prices current of the San Francisco market as to the value in gold of said notes.

The defendant first demurred, and then answered, his demurrer having been overruled. The Court found the facts substantially as stated in the complaint, and rendered a judgment in favor of the plaintiff, payable in gold coin, for two thousand nine hundred and forty dollars and twenty-two cents, the amount of principal and interest found due on the contract, with a direction in the judgment that it bear the same rate of interest as the contract. The defendant appealed.

*Jos. E. N. Lewis*, for Appellant.

By the terms of the instrument this defendant had the right to make default in payment of the gold, which default annulled the contract as to the payment of gold, and plaintiff's pretended cause of action, if any, was upon the second contract.

The agreement to depreciate the currency of the United States, known as the treasury notes, by paying them on said demand at their supposed market value in San Francisco, is likewise null and void, for the reason that said agreement is wholly without any consideration and in contravention of the laws of Congress as applied to the currency of the United States. And in contemplation of law, as one dollar in coin is not of more value than one in United States treasury notes, by the nonpayment of coin, as contradistinguished from said notes, the plaintiff would sustain no damage.

It is a self-evident proposition that the maker of the instrument set forth by copy in the complaint, secured to himself the privilege of paying the amount due thereon in any one of the currencies contemplated by the instrument. The choice of the currency was with the maker, and not with the owner of the instrument.

The contract does not set forth an agreement to pay in any

particular kind of money, but is an agreement to pay in one of two kinds of money, to wit: gold coin, or United States legal tender notes. An agreement to pay in one of two currencies is not an agreement to pay in any one specified currency, in the meaning of the Act, that would justify the Court in rendering a judgment directing its payment in one currency, as contradistinguished from the other currency designated by the contract set forth in the note. (Statutes of 1863, p. 687.)

*George Cadwalader*, for Respondent.

If words can ever be called the representatives of ideas—certainly in this note they express as the most prominent idea of both maker and taker that the note was to be paid in gold coin: "I promise (says Gluckauf) to pay to the order of George C. Perkins the sum of $2,843 in gold coin of the standard value of 1860 of the United States of America."

The addenda to the note is surplusage, and may be stricken out, leaving the full contract to stand—and which is enforcible under the two hundredth section of the Practice Act. (*Carpentier* v. *Atherton*, 25 Cal. 564.)

The last clause in the note, when considered in the light of the pleadings, shows that a performance of it would be as damaging to respondent as the judgment rendered—for by it he agrees to pay by way of damages the quantity of paper that it takes to buy the agreed value in gold coin. The effect of this clause is, however, considered by appellant to waive a liquidated claim in favor of an unliquidated one, and thus by reason of a violation of an agreement to pay a sum certain in a given time he would gain an advantage that a performance according to agreement would not have given. The law, however, confers no such reward as a breach of contract—no such immunity nor premium is given to a wrongdoer; but, on the contrary, the law strives by its machinery to give that which was promised, as well as costs by way of damages. The right of election is not given to the party in default. The last clause in the note gives damages as a penalty result-

ing from the non-observance of the first clause. To this penalty we are not necessarily obliged to have recourse, for the two hundredth section of the Practice Act gives us the right to have the contract specifically performed.

By the Court, SANDERSON, C. J.

All the points made by counsel for appellant relating to the constitutionality of the so-called Specific Contract Act of 1863 we pass without further notice. So far as this Court is concerned, that question has been put at rest (*Carpentier* v. *Atherton*, 25 Cal. 564,) and contracts made under that Act must be held valid.

But it is claimed that the contract in this case is not within the meaning of that Act, and in support of that proposition the case of *Lamping* v. *Hyatt et al.*, 26 Cal. 99, is cited. That case, however, does not sustain the proposition. We there held that the contract sued on was not a gold contract and did not therefore support the judgment, which required satisfaction in gold. There is an obvious difference between the terms of the contract in that case and the contract in this.

The Specific Contract Act (so called) did not propose to make contracts legal which otherwise were illegal, but to extend to certain contracts assumed to be legal the equitable remedy of specific performance. It was matter of doubt whether, assuming those contracts to be legal and not repugnant to the legislation of Congress upon the subject of legal tender, the Courts had the power to enforce their performance in such a manner as to secure all the benefits intended thereby, or, in other words, whether the Courts would or could, without the aid of legislation, extend to such contracts the remedy of specific performance. To remove that doubt, and for no other purpose, the Act in question was passed. If the Courts should determine that contracts of the character contemplated by the Act were illegal and void on account of some repugnancy to all or either of the laws of Congress providing what shall be legal tender in payment of debts, the Act would have

no office to perform and become harmless because inoperative. If, on the contrary, such contracts should be held valid, a remedy in case of their nonperformance, about which there could be no controversy, would be provided, and any inconvenience which might result on account of any real or supposed uncertainty as to the remedy would be obviated. Such was the object of the Act in question, and it had no other purpose. It was not intended to operate in hostility to any of the laws of Congress, but to secure on the part of all citizens an honest observance of the terms of their contracts and to prevent them, so far as it could be lawfully done, from availing themselves of a legal measure of public necessity to work a moral and private wrong.

The contract in suit, in our judgment, belongs to the class mentioned in the Act in question. Counsel do not agree as to its meaning. We shall first assume for the purposes of this opinion the one adopted by counsel for the appellant. It is then an alternative contract and provides for payment in either of two kinds of money, at the election of defendant, both of which are therein specified. The precise amount to be paid, if paid in one kind is fixed; if paid in the other kind the mode by which the amount is to be ascertained is clearly defined, and by that mode can be readily determined with certainty. Such being the case the judgment by the terms of the Act in question ought ordinarily to follow the contract and fix the amount to be paid if paid in gold and the amount to be paid if paid in legal tender notes. The defendant could then have paid it off in either kind of money. If he did not pay voluntarily the execution would have followed the judgment and alternatively directed the Sheriff to collect in either kind of money. At the sale the defendant could have directed the Sheriff to sell for gold or legal tender notes at his option. ·If he did not so direct, the plaintiff or the Sheriff could have elected. So there is no good reason why this contract may not be held to be within the Act even when construed as contended for by counsel for the appellant.

But there is another interpretation of this contract which

was adopted by the Court below and which we think is the right construction. To interpret a contract is to ascertain the true intent of the contracting parties, and when that has been done it is the duty of the Court (unless the intent be an illegal one) to carry it out and to render that form of judgment which will be most effectual for that purpose.

No one can read the contract in question without the conviction that it was made to take on its peculiar form solely for the purpose of affording security and protection to the payee and not to secure to the maker a privilege or an advantage. It is manifest that it was the first intention of the payee to secure a payment in gold if such payment could be lawfully enforced; and secondly, if that could not be done, payment in legal tender notes at their value in the San Francisco market when converted into gold. It was not the intention of the parties to the contract to give the maker the benefit of an alternative, but to compel payment in gold, which is especially evident from the fact that the alternative claimed to have been stipulated for could not possibly, if the contract should be performed in that way, secure any advantage or benefit to him, for in either way he agrees to pay the same value, and the Court in decreeing specific performance by exacting payment in gold has not gone beyond nor stopped short of the intention of the parties.

It is next claimed that the relief granted exceeds that prayed for in the complaint. This point is based upon the fact that the complaint does not ask for accruing interest, and that the judgment be made to draw interest at the same rate as the contract, whereas the Court allowed accruing interest and framed the judgment so as to make it draw the same rate of interest as the contract. In support of this point *Lamping & Co.* v. *Hyatt et al., supra,* is cited. But that was a case of default. Where judgment is by default, the Court cannot grant greater relief than is demanded in the complaint; but where there is a trial, the Court may grant any relief consistent with the case made in the complaint and embraced within the issue. (Prac. Act, Sec. 147.) The contract is set

out, in the complaint, and accruing interest and interest on the judgment are embraced within the issue, notwithstanding they are not included in the prayer.

Judgment affirmed.

SAWYER, J., concurring specially.

I concur on the second ground stated in the opinion.

CURREY, J., concurring specially.

I concur in the judgment.