A. HAAS, Appellant, *v.* MISNER & LAMKIN, Respondents.

REVENUE LAW—TAX—DEBT.—A tax levied or authorized by the territorial legislature, is a debt within the meaning of the act of congress authorizing the issue of legal tender treasury notes.

STATUTE.—A territorial statute requiring the payment of taxes in any other than lawful money, at par, is void as being in conflict with the act of congress, of February 25, 1862.

APPEAL from the third judicial district, Ada county.

*Curtis & George*, for the appellants:

It is evident from the reading of the act of congress, of February 25, 1862, that congress did not regard debts and taxes as one and the same thing, or as consisting of the same kind or character of demand, liability, or obligation,

from the manner in which the two terms are used in that act, and we contend that the words "all debts, public or private," as contained in said act, were not only not intended by congress to include state or territorial taxes, but that by no legitimate construction of the terms themselves, and of their ordinary purport and meaning, can the word "debt" be understood or construed to mean taxes. (*Perry* v. *Washburn,* 20 Cal. 318.) Debts, whether public or private, and the obligation to pay taxes, have but few features in common. About the only one is to pay, perform or discharge, and that in the manner prescribed, whether by the terms of the contract, in case of debt, or by requirement of statute in case of taxes. There can be no debt, as we understand it, in the absence of a contract, either express or implied.

*Seth Weldy,* for the respondents:

Is the law enacted by the legislature of this territory, requiring all taxes due the territory to be paid in gold coin or its equivalent, in conflict with the act of congress of February 25, 1862? If so, then it is invalid and of no force or effect whatever. If there is such a conflict the law of congress must stand, and the territorial law must fall. (*McCulloch* v. *State of Maryland,* 4 Pet. 492.) The law of the territory in question conflicts with the law of congress, in that it seeks to enforce the payment of debts (taxes) in a different currency or money from that which is expressly made lawful by the supreme law of the land. The only question that arises in this case is whether the tax due a state or territory from its citizens are debts within the meaning of said act of congress. What is the definition of the word debt? In its most enlarged sense, it means any kind of just demand. (Bouv. Dict.) It also includes obligation, liability. Thus it will be seen that the word debt means obligation, liability. A debt, obligation, or liability may be incurred by express contract, or by implication and operation of law. A tax is an obligation or debt, raised by implication and operation of law. The payment of a tax may be enforced in the same manner as any ordinary liabil-

ity by action of debt. Is there any question, then, that taxes due the state from its citizens do not fall within these definitions? A tax has been adjudicated to mean a debt due from the property-holder to the state, in two instances from the very same bench (California) which has more recently decided otherwise. (*People* v. *Seymour et al.*, 16 Cal. 332; *Moore* v. *Patch*, 12 Id. 265.)

CUMMINS, J., delivered the opinion of the court, KELLY, J., concurring, McBRIDE, C. J., dissenting.

This action was instituted by the assessor of Ada county in the court below for the purpose of enforcing the payment of the taxes levied for county, territorial and other purposes, assessed by the plaintiff against the defendants, who were residents and property-holders of said county. Payment was demanded at the time of making the assessment, in gold and silver coin, or their equivalent in gold dust, or in bullion, or in legal tender treasury notes at two per centum above their San Francisco market quotations, which was following the letter of the statute as enacted at the third session of the legislature.

There was also the further question submitted to the court below as to whether permanent and substantial improvements upon lands were to be considered for the purpose of taxation as real estate. This was answered in the affirmative, but is not now complained of as error, the only error assigned being, Are the legal tender notes issued in pursuance to the act of congress, dated February 25, 1862, a legal tender for the payment of taxes, notwithstanding an act of the territorial legislature requiring them to be paid as above stated?

This is a question of an important and grave character. It is one upon which the highest tribunals of some of our sister states and territories, and upon which some of the ablest jurists of our country have arrived at opposite conclusions. The answer to this inquiry must, no matter what it may be, directly affect every interest of the community. Hence, I approach its investigation with a due sense of the difficulties to be encountered, and the responsibilities to be

met.    Another great embarrassment met with at every step of this investigation is the great dearth of authorities.

The constitutionality of the act of congress authorizing the issuance of these notes and making them a "legal tender in the payment of all debts, public and private," has been affirmed by too many of the tribunals of last resort in many of the states of this Union to be now considered an open question; and, in fact, I do not understand that it was seriously called in question by any of the counsel who appeared in the case at bar.    The validity of the act itself, then, being beyond cavil, it remains only to determine whether the term "taxes," as used in our statutes, is comprehended within its terms when it is said that the notes issued in pursuance of the provisions of that act shall be a legal tender for all "debts, public and private."    The act itself contains an enumeration of all the debts or obligations which are excepted from liability of payment by these notes.    This enumeration excludes taxes, internal duties, excises, debts and demands due the general government, and includes duties on imports and the money to be raised with which to pay the interest upon bonds and notes, which shall be paid in coin; then follows the clause that these notes "shall also be lawful money and a legal tender in payment of all debts, public and private, within the United States."

Of course this last quotation is the controlling clause in all cases of a character similar to the one now under examination.    If it were admitted that taxes were debts in the common legal acceptation of the term, there would be but little difficulty in arriving at a correct conclusion.    For all debts of whatever character are comprehended, except those specially excepted, and this is the paramount law of the land.    That all laws of a state or territory are null and void which contravene, in any manner, either by engrafting limitations on or exceptions to the provisions, of an act of congress valid under the federal constitution, has been definitively settled by a course of judicial decision both by the courts of *dernier resort* in many of the states and by the supreme tribunal of the union, and that, too, by argument unanswerable.    In the great case of *McCulloch* v. *State of*

*Maryland*, this was one of the points expressly raised and discussed with great force and learning by the justly celebrated jurist, Chief Justice Marshall, and the opinion rendered by him was unanimously concurred in by the full bench.

Upon this, then, there can be no question that if any act of the territorial legislature contravenes, or is in opposition to any provision of an act of the federal legislature, which itself is not obnoxious to any provision or clause of the national constitution, or, in other words, is rightfully within the power of congress to pass, then such act of the local legislature must yield, must be declared void and inoperative. Are, then, the acts of the legislature of this territory which require taxes to be paid in gold coin, or its eqivalent, in conflict with this act of congress? Do these acts in any manner militate against the provisions of that act? Are taxes, as understood by our laws, a "debt, public or private," within the meaning of either of these terms as used in the act of congress?

It has frequently been said, in considering this subject, that congress itself has recognized distinction between the terms "taxes" and "debt." This is argued from the fact that in the enumeration both terms occur. And unless there was a distinction made in the import of these terms, the law-makers would be chargeable with making a useless repetition. This argument savors more of assumption than of logical deduction from the language of the act. It is quite true that there are scarcely any two words in the language that have precisely the same shade of meaning or signification in all their uses or combinations. Much more is this true of these terms. The term "tax" may and does not in every sense or connection comprehend all the shades of meaning conveyed by the word "debt," but the latter may, and often does, in all correctness, include or convey the same idea we wish to express by the former, in at least its less technical sense, and many times much more. Hence, in this connection the word debt—and it certainly comprehends within its meaning all that is conveyed by the word "demand" used in the same connection—may include strictly

all that is understood by the term "tax," and yet having a more extensive signification, or applying more usually to a different class of obligations, its use in the same sentence with the word "tax" is perfectly consistent with every rule of good composition. Therefore, I do not think a liberal interpretation of the language will warrant the conclusion often contended for, nor yet militate against an affirmative answer to the questions above propounded. The clause wherein the terms "taxes" and "debts" occur has reference solely to all those obligations and demands due the United States, and has no reference to or direct connection with the legal tender clause, and hence can not, as I deem it, have any particular bearing or influence upon the meaning of the term "debts," as it occurs subsequently. But, be this as it may, this question must, after all, be determined by the true meaning of the words "debts, public or private," as used in that act; and we are only permitted to go to the context in cases of doubtful construction.

It was ably argued by the counsel for the plaintiff that a tax was not a debt as understood by, the legal acceptation of this term; that a tax is simply an obligation, a due or contribution levied upon the citizen or upon property for the purpose of raising the means necessary to carry on the political functions of the territorial organization; that it in no sense partakes of the nature of a debt, which is an obligation arising upon contract only, either express or implied. And in support of this position I am cited to the case of *Perry* v. *Washburn*, 20 Cal. 318. It is true that the court in that case did so decide. And while I entertain the highest appreciation and respect for the learned judges who compose that tribunal, I must dissent from the conclusions arrived at in that case as not being justified by sound principles of law. It is there said a tax is not a debt within the meaning of the act of congress making treasury notes lawful money. It is also said " a tax is a charge upon persons or property to raise money for public purposes." The reasons then offered for the correctness of this statement are that a "tax is not founded upon contract; it does not establish the relation of debtor and creditor between the

taxpayer and the state; it does not draw interest; it is not the subject of attachment; and it is not liable to set-off."

Now, I submit in all candor that not one of these propositions or reasons, except the second which speaks of the relation of debtor and creditor, is a constituent part of a contract upon which to found a debt in its most technical sense.    It is not essential to the validity of a contract that there should be a statutory provision making the indebtedness arising thereon subject to attachment, to set-off, or that it should draw interest.    It is true that all or nearly all debts arising upon contracts entered into between individuals, firms or corporations, under our laws, are liable to be affected by these incidents, but this does not alter, change, or in the least affect the constituent elements of a contract as such.    A state or territory can not be impleaded in a suit upon her indebtedness without express permission of law, and yet these obligations are none the less a debt.    It is further stated that a tax owes its existence to the action of the legislative power, and does not depend for its validity or enforcement upon the individual assent of the taxpayer.    Most certainly his assent to this imposition or levy can as fairly and fully be presumed or implied on his entering into the community as one of its members, as his promise to pay the reasonable value of articles taken by him from the merchant's counter, when not a word is uttered about their price or about payment.   When an individual enters a state or other organized government, he impliedly, at least, agrees to contribute his mite towards sharing its burdens and protecting its interests and organization.

Say the court of appeals of New York: "Money is property; taxation takes it for public use, and the taxpayer receives, or is supposed to receive, his just compensation in the protection which the government affords to his life, liberty, and property, and in the increase in value of his possessions by the use which the government makes of the money raised by taxation." (*People* v. *Mayor etc.*, 4 N. Y. 419.)

Hence the argument of that court (the supreme court of

California) does not necessarily or logically conduct us to the conclusions drawn by it. The remainder of the decision upon this point merely assumes the argument or the proposition by saying that the term " tax," as used in statutes, is used in its legal and technical sense, and not in its more comprehensive and usual meaning.

The definition of the term debt, as given by Bouvier, " is a sum of money due by express and certain agreement." In this sense it could only arise upon contract, but it is not, by any means, used in this sense by statutes in all cases. I would further remark that this is its technical legal meaning. But, continues the same author, "in a less technical sense, as in the 'act to regulate arbitrations and proceedings in courts of justice,' in Pennsylvania, it means any claim for money," notwithstanding the supreme court of California say that when used in statutes it is with reference to its more technical meaning. " Again," says Bouvier, " it means any claim for money. But in a still more enlarged sense, it denotes any kind of a just demand." Webster says, in defining this term, that it is "that which is due from one person to another, whether money, goods or services; that which one person is bound to pay or perform to another."

Certainly these definitions are broad enough to comprehend the purpose and object of congress when they used the term, and that, too, without using it in its popular and most comprehensive meaning. Hence, I can not assent to the views of the court in the case of *Perry* v. *Washburn.* The object of taxation, as agreed by all, is to raise money to defray the necessary expenses of carrying on the territorial or state government, to lubricate the machinery of government, if the expression may be allowed. Money, as understood in this connection, has reference to the legal currency of the country. If, then, the object of taxation is to raise money only, that is, that medium of exchange which is by law made legal currency, then it follows that the legislature can not exact or require the payment of anything else. It is often asserted that the states, and the territories as well, are supreme in matters pertaining to their

12

revenue system; otherwise it would be in the power of congress to impose such burdens or limitations in this respect as would most effectually destroy the state organization; that the revenue system is one of their most vital and important interests. This is all granted so far as the states are concerned, and for the purposes of the argument may be applied to the territories also. And yet it does not necessarily follow that they may prescribe or require the payment of taxes in anything they may deem proper, other than lawful money. A state may levy and collect taxes on any property or persons within her limits and subject to her jurisdiction and control. But this right, over which congress does not claim to exercise any authority unless it be incidentally, is simply the power to levy and collect taxes, and, as before observed, has no reference to the means by which this obligation or due, when ascertained, shall be discharged. This does not in the least militate against the right of the state or territory to receive in payment of taxes her certificates of indebtedness through her revenue officers; but she can not compel their payment in these evidences. If the converse of this proposition were true, it would certainly be within the power of the legislature, if actuated by a whim, or by sinister motives, to require their payment in eastern exchange or exchange on the Bank of England, or in any other paper which would be absolutely out of the reach of nine tenths of the taxpayers.

It will not do to say that their interest in the welfare of the state and their reponsibility to their constituents will be sufficient safeguards against corrupt legislation of this or any other character. Suppose the powerful mining and other corporations doing business in this territory were to concentrate a heavy and combined moneyed influence upon a corrupt and venal legislature—an institution not entirely unknown to the history of our republic—and should procure the passage of an act making their certificates of stock lawful money in the payment of taxes, I think it would be difficult to find a lawyer who valued his legal opinion as worth anything, who would be willing to defend such an act as valid. This, of itself, is sufficient to present the glaring

absurdity of the proposition that a state or territory may exact the payment of her taxes in anything they may desire to, whether it be lawful currency or a worthless commodity. The territory enters into obligations to pay her officers certain and fixed salaries for their services; to purchase buildings, or to pay rent for the use of them; to pay for stationery, fuel, and other means indispensably necessary to carry on the territorial government. Are not these debts in the strictest sense of this term? If so, her creditors can not be compelled to receive anything but legal currency in discharge of these obligations. It seems to me, then, to be a very strong presumption, to say the least, that if a state or territory can not, any more than an individual, pay off her indebtedness in any currency or medium of exchange except that legalized by congress, that she can not use the power of taxation, which is the authority by which to provide the means to meet these obligations, for the purpose of exacting from the taxpayers anything which can not be used to the accomplishment of the end and design of taxation.

It was recently decided in the case of *The United States* v. *Washington Mills,* in the United States circuit court for the first circuit, that in addition to the remedy by distraint, assumpsit lies for the collection of taxes. Now, assumpsit is an action for the recovery of damages for the non-performance of a parol or simple contract. It is not sustainable unless there has been an express contract, or unless the law will imply a contract. Says Mr. Chitty in his excellent and comprehensive treatise on pleadings: "The breach of all parol or simple contracts, whether verbal or written, or express, or implied, or for the payment of money, or for the performance or omission of any other act, is remediable by action of assumpsit. The very foundation, that only upon which it can be based, is a promise, express, or implied. (*Vide Metcalf* v. *Robinson,* 2 McLean, 364.) To maintain this action, there must be a privity between the parties, but it may be a privity in fact, or in law. (*Frazer* v. *Carpenter,* Id. 237.)

Whatever may have been the particular circumstances out of which the case of the *United States* v. *Washington Mills*

arose, there is no doubt but the decision was based, and that rightly, too, upon the liability of the party to pay the taxes levied against him, and that, too, in cases where the revenue system or other statutes make no provision in terms for any other proceeding for the collection of taxes than by distress. And in view of the fixed and universally admitted definition of that action, the relation of debtor and cred- itor must have existed between the taxpayer and the gov- ernment, there must have been a promise, implied, at least, on the part of the defendant, otherwise that action could not have been maintained. Therefore, if this promise be true or correct, and it is supported by authority as well as principle, if assumpsit will lie in such cases, it is solely be- cause the obligation to pay a tax levied against a citizen is a debt, and being so, there is no question of the right of such citizen to discharge this debt—this obligation, or im- position, as it is termed by the plaintiff—by the legal cur- rency of the country.

This would be conclusive of the case at bar, but for the argument often urged that under our tax system a suit is not necessary to enforce collection—that the taxes are by statute made a lien upon the property of the delinquent, and that the tax collector may seize and sell such property to satisfy such demand without first obtaining a judgment in an action founded upon the legal liability to pay the taxes assessed. To enforce the payment of a debt by pro- cess of law it must be reduced to a judgment upon which an execution will issue, and which is the warrant of the ministerial officer for levying upon and selling property. But all this has reference to the remedy solely, and not to the character or nature of the original obligation itself. It can make no kind of difference with the nature of the de- mand, with its legal elements and the liability of parties to it, whether the remedy is by seizure and sale under a judg- ment first obtained, or simply upon the assessment as made by the proper officer. The obligations to discharge it are precisely the same in either case. And it necessarily fol- lows that if in the one case it can be discharged by the legal currency of the country, whatever it may be, it may

equally as well be in the other.    There is no logical escape from this conclusion.

Taxes under the territorial revenue system are a percentage levied or based upon the value of the property as fixed by the taxpayer and the assessor, and is expressed in dollars and cents, as required by law, except that *per capita* taxes are fixed at a definite sum for each individual liable for such imposition.    And the tax itself, on property, is fixed at a certain sum in dollars, in proportion to the amount of property.    In short, the leading, the sole idea is to obtain money.    It is not the exercise of the power of levying and collecting a certain or definite proportion of the products of a man's labor, whether of the farm or of the manufactory, even if it be admitted that such a one exists with us, or of taking a given parcel of property, real or personal, for public purposes, for this would be the exercise of the power of eminent domain, and would require the return of just compensation.

Undoubtedly the want of sufficiently attending to the distinction between the right of eminent domain and the power of taxation has led many into error.    Under the former power, property as distinguished from money, is taken, but by giving just compensation therefor, as in case of sale and purchase, while under the power of taxation money only is to be raised, as I have already remarked.

Neither is the military power of a state or political community the same as the taxing power.    It is admitted that they both have a common origin; that they are attributes of sovereignty, and hence come from the people.    But this is the only point of similarity, unless it is in the fact they are exercised by the duly authorized agents of the people, in their legislative capacity, for the maintenance of the welfare of the state.    But it is confounding all distinctions in the use of terms, and in principles, to say that the military power, the taxing power, and the power of eminent domain, are the exercise of but one and the same authority in the government.    Each has for its accomplishment certain ends, which are of a different character in each case. It would be a perversion of language to talk about levying men for military service, and then to say it was simply tax-

ing the people—that it was merely using the taxing power. And, *vice versa*, an act to levy money—levying a tax—can not, in any proper sense of the term, be said to have been enacted by virtue of the military authority of the government. I grant that each of these powers, especially the military and taxing power, has but few limitations in the extent to which they may be used. But this does not argue that the authority is vested in the legislature of exacting anything from the people as taxes, whether it be money, goods, or chattels. Simply because the legislature may impose a tax to almost any extent, being limited almost solely by their own sense of the public demands, and because they may tax any property, persons, trades or professions, or because they may provide that the taxes when levied may be collected by warrant of distress, or by action, judgment, and execution—because, I repeat, they may do any one or all of these things, no more argues that they may, under pretense of taxing me, demand my horse or any other item of personal property aside from money, than it proves or argues that they may take my farm for public use, without just compensation.

In a recent case in the territory of Utah the collection of a certain school tax was perpetually enjoined because the legislature did not provide that the tax-collectors nor the treasurers should give bond for the faithful keeping and proper disbursing of the moneys so raised, nor did any law provide that those moneys should be paid out for any purpose. And yet I do not suppose that any one would for a moment question the correctness of the decision in that case. But this would have been all wrong if there is no limitation to the legislature in this matter, except in their own discretion. If the position be correct, based upon the assumption of the unlimited power of the legislature in matters of taxation, then it was beyond the reach of the judiciary, for it had been levied and directed to be collected, which left nothing to be done but to execute the law.

There must be and properly is some limit in the exercise of this right, which is found mainly in the objects to be attained. Besides, to say that the legislature can only raise money under the taxing power, is not in the least crippling

the government or circumscribing it in any manner to its detriment, or to make it less effective in the accomplishment of the objects of its institution. With but rare exceptions this has been the extent to which it has been used since the organization of our republican forms of government in the states. And yet no serious inconvenience has ever been complained of or felt.

That the legislature can not discriminate between the different kinds of money made a legal tender, with reference to the material out of which the tangible representation is made, I think too frivolous to require more than a passing notice. In contemplation of law the representative of a dollar made of one of the metals is of no more value than that composed of paper. The intrinsic value of the material entering into the composition of the tangible representation of these values forms no part of their legal value as a medium of commerce. Plainly stated, a dollar in law is precisely the same whether composed of gold or of paper. I am not, however, unmindful of the fact that a contrary principle was laid down by the supreme court of California in the case of *Carpenter* v. *Atherton,* 25 Cal. 564. But, to use the language of the supreme court of the state of Nevada, in reference to the same case, "it is not from disinclination that I fail to approve the opinion of the learned court upon so grave a question as the one involved, but a sense of duty and responsibility to my convictions of what I believe the law really is, forces me to a conclusion opposite to that declared by that able and highly respectable tribunal." There is no real distinction in the liabilities of the parties, whether the promise be to pay in "gold coin" or to pay in " lawful money." And yet this is the basis of the entire argument of the court in that case. In either case it is simply, when stripped of all sophistry, a promise to pay the amount of the indebtedness in the lawful money of the country, unless the gold is treated as a commodity, which is not pretended by the court. As well might it be said that the court would be bound to enforce the specific performance of a contract which was entered into stipulating to pay in twenty dollar gold pieces or fifty dollar treasury notes, or in pieces of bills representing those values,

and that the judgment could not be satisfied by pieces or bills of any other denomination. As unsound as this proposition appears upon the bare statement, it is but a legitimate deduction from the position assumed by the court.

I have, therefore, been conducted to the conclusion that it is not within the power of the legislature to require, nor in the officers of the law to enforce, the payment of taxes in anything but the legal currency as established by the various acts of congress. That the obligation to pay taxes may be discharged by the payment of any money recognized as a lawful tender for the payment of debts generally, without reference to the fact whether it be gold or silver coin or legal tender treasury notes. In other words, the obligation to pay taxes or the tax itself is a debt within the meaning of the act of congress of February 25, 1862, and hence all those acts or parts of acts of the legislature requiring the payment of taxes to be in gold or silver coin only, or its equivalent, are null and void so far that payment can be made, as already stated, in anything that is a legal tender in payment of debts.

Assessments should be based upon the true valuation of property, expressed in dollars and cents. The manner or mode of arriving at or ascertaining this must, of course, be left to the assessor and the taxpayer. These officers are amenable to the law for the faithful and proper performance of their duties, and if any person is aggrieved by acts not strictly within the line of their duty, the law affords the means of adequate redress. The assessor, not being the proper revenue officer to receive the taxes assessed on real estate, could not legally demand that portion of the defendants' taxes. These will be paid at the proper time to the collector of taxes levied on real estate, and not the assessor. The *per capita* and hospital taxes and the taxes assessed on the personal property of the defendants, were tendered in lawful money; and it was the duty of the assessor to have received them, if authorized to receive them at all, though they can not be demanded by him, the defendants owning real estate within this county.

The judgment is, therefore, affirmed.